ACCEPTED
13-15-00198-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/15/2015 10:23:04 AM
CECILE FOY GSANGER
CLERK

#13-15-00198-CR

Thirteenth Court of Appeals, Corpus Christi & Edinburg

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/15/2015 10:23:04 AM
CECILE FOY GSANGER
Clerk

**THE STATE OF TEXAS**,
Appellant

v.

**ANDREW BERNWANGER**,
Appellee

ON STATE'S APPEAL FROM THE COUNTY COURT AT LAW NO. 1
OF NUECES COUNTY, CAUSE #12-CR-0438-1

## **DEFENSE'S BRIEF**

R.C. Pate
Tex. Bar #24052165
321 S. Flores Street
San Antonio, TX 78204
210-275-7294 phone
210-568-4726 fax
rc.pate@gmail.com

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**Appellee:**  Andrew Bernwanger, represented by

Trial and Appellate Counsel:

> Robert C. Pate, Jr.
> 321 Flores
> San Antonio, TX 78204

Initial Trial Counsel:

> Les Cassidy
> 814 Leopard St.
> Corpus Christi, TX 78401

**Appellant:**  The State of Texas, District Attorney for the 105th Judicial District, represented by

Appellate counsel:

> A. Cliff Gordon, Asst. Dist. Atty.
> Nueces County Courthouse
> 901 Leopard St., Rm. 206
> Corpus Christi, TX 78401

Trial and appellate counsel:

> Mark Skurka, District Attorney
> Dulce Salazar Valle, Asst. Dist. Atty.
> Nueces County Courthouse
> 901 Leopard St., Rm. 206
> Corpus Christi, TX 78401

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL…………………………………………...ii

INDEX OF AUTHORITIES…………………………………………………….……iv

STATEMENT OF THE CASE…………………………………………………….…...v

ISSUE PRESENTED……………………………………………………….....vi

> The State chose to go forward on two municipal citations that were tried to a jury. That jury returned a verdict against the state. The State argues they incur no negative consequences from losing a jury trial in municipal court even when all evidence for the subsequent offense would be based on those charges. Does this violate the double jeopardy or, in the alternative, does collateral estoppel bar the second prosecution?...……………………….…………………………………… vi

STATEMENT OF FACTS…………………………………………………….....1

SUMMARY OF THE ARGUMENT…..…………………………………………... 1

ARGUMENT……………………………………………………………..…… 3

    I.      The Differences Between *Ashe* and *Blockburger*……...……………….... 3

    II.     Res Judicata……………………………………………………….…… 5

    III.    The State's Cases Are Not Controlling In That None Of Them Involve Jury Verdicts……………………………………………………… 6

    IV.    The State's Argument Concerning The Lack Of Evidence Is Likely Correct, But It Is Argued Insincerely….…………….…..…………………………… 8

    V.     Policy Considerations Discourage the Court from Taking the State's Position………………………………………………………………... 9

PRAYER…..………………………………………………………………. 10

CERTIFICATE OF COMPLIANCE…..……………………………………….…...11

CERTIFICATE OF SERVICE…..…………………………………………….….. 11

# INDEX OF AUTHORITIES

**Cases**

*Ashe v. Swenson*, 397 U.S. 436 (1970) ............................................................ 2, 3, 4, 5, 10

*Blockburger v. United States*, 284 U.S. 299 (1932)............................................................ 3

*Dowling v. United States*, 493 U.S. 342 (1990)............................................................ 6, 7

*York v. State*, 342 S.W.3d 528 (Tex. Crim. App. 2011)....................................................... 6

# STATEMENT OF THE CASE

| | |
|---|---|
| Nature of the Case | On November 6, 2011, The Corpus Christi Police Department stopped Andrew Bernwager and gave him citations for Running a Stop Sign and Passing on the Wrong Side of the Road. They also arrested him for Driving While Intoxicated. The DWI was investigated subsequent to the traffic offenses. |
| Course of Proceedings | On February 24, 2015, The State of Texas, through their agent, the City Attorney for Corpus Christi, proceeded to trial on the two traffic citations in one setting. That trial was to a jury, who returned a verdict of Not Guilty. |
| Trial Court's Disposition | On March 9, 2015, the trial court signed Trial Court's Order Granting the Claim of Collateral Estoppel based upon the jury's verdict. |

## ISSUE PRESENTED

The State chose to go forward on two municipal citations that were tried to a jury. That jury returned a verdict against the State. The State argues they incur no negative consequences from losing a jury trial in municipal court even when all evidence for the subsequent offense would be based on those charges. Does this violate double jeopardy, or, in the alternative, does collateral estoppel bar the second prosecution?

**STATEMENT OF FACTS**

On November 6, 2011, Andrew Bernwanger was stopped by CCPD Officer Saldana and subsequently charged with the offenses of Driving While Intoxicated, Running a Stop Sign, and Passing on the Wrong Side of the Road. CR 5, 8. Brief of Appellant at 1 (State's Brief).

On February 24, 2015, The State of Texas proceeded to trial against Andrew Bernwanger on the two traffic citations. Both offenses were tried to the same jury. CR 70. At said trial, Officer Saldana testified to all the traffic violations that were the basis of the reasonable suspicion for this DWI stop. CR 70; RR 9. The jury found Andrew Bernwanger not guilty of both traffic charges. State's Brief 10 n.5.

On March 9, 2015, the Judge ordered that the two not guilty verdicts collaterally estopped the State from re-litigating the issues of Defendant's stop. Thus, all evidence seized after that point in time was suppressed as fruit of the poisonous tree. CR70, The State appealed.

**SUMMARY OF THE ARGUMENT**

Andrew Bernwanger has already been found not guilty of Running a Stop Sign and Passing on the Wrong Side of the Road by a jury of his peers. CR 70, State's Brief 1, 10 n.5. However, the State wants to argue yet again that he actually committed these offenses, and this time it wants to do so at a lower burden of proof (State's Brief 3).

Procedurally, Defendant was placed in Jeopardy for the possible punishments of those crimes and a potentially more serious offense in 2011. Moreover, he was also arrested (CR 7), placed on bond (CR 8-11), compelled to hire two different lawyers (CR

1

12, 48-52, 64-65)[1], and subjected to pending charges for three and a half years (CR 5-6, 70). Despite winning a jury trial on the issue (CR 70; State's Brief 1) and having the Judge agree his prosecution was barred by the State (CR 70), Defendant is enduring prolonged procedural limbo again with the State's appeal (CR 71-76).

This is exactly the repetitive prosecution prohibited by both the United States and Texas Constitutions. *Ashe v Swansen,* 397 US 436 (1970). The State chose to go forward with the traffic ticket trials and lost. Now they want to try the same case again at a lower burden of proof.

The Defense does concede, however, that the entirety of the trial transcript should have been admitted at the lower court hearing on this issue. While the documents provided to the court about the traffic tickets, which were discussed in RR 6-7, are conspicuously absent from the Clerk's record, the entirety of the transcript is likely necessary to come to a determination on this issue. In so realizing, Defense asked the State if they would agree to a remand for a hearing to introduce said transcript. The State denied such a request. As such, the Defense asks this court to remand the case back to the trial court for a hearing, wherein defendant can introduce the recording of the entire trial proceeding and the county court can make specific findings in regards to which issues are precluded from litigation.

---

[1] It should be noted Defense Counsel's notice of appearance of counsel is missing from the Clerk's record along with other documents which will be discussed later in this brief.

## I. The Differences Between *Ashe* And *Blockburger*

There are at least two types of actual double jeopardy. The first category, which is frankly the easiest to understand, is the *Blockburger* type. This type of double jeopardy is defined as both crimes having an element that is distinct from the elements of the other. *Blockburger v. United States,* 284 U.S. 299 (1932). This type of jeopardy is what prevents the State from getting two guilty verdicts. A guilty verdict on one crime in a *Blockburger* scheme prevents the state from pursuing guilty verdicts on other cases lacking distinct elements. The defense completely cedes the argument that the cases involved before the court today do not meet the *Blockburger* criteria. Had the State prevailed at the trial on the traffic tickets, double jeopardy would in no way prevent it from prevailing at the DWI trial.

A completely different type of double jeopardy occurs when a person is found not guilty for some reason. *See* generally *Ashe v. Swansen,* 397 U.S. 436 (1970). When the State tries a case and loses, it should not get to re-try the case with a slightly different fact scenario (which would be allowable under *Blockburger*). In *Ashe*, the defendant was accused of being one of a group of persons who robbed a poker game. The State first charged Ashe with robbing Victim 1, and the jury returned a "not guilty" verdict. After using the first trial as a practice run, the State called different identifying witnesses and coached them better on what to say to on the stand in the robbery charge for Victim 2. The second jury found Ashe guilty. The United States Supreme Court said that such trial tactics are precisely what was barred by the double jeopardy clause of the U.S. Constitution.

3

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer*, 242 U.S. 85. As Mr. Justice Holmes put the matter in that case, "It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt." 242 U.S. at 87. As a rule of federal law, therefore, "it is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case, either because of lack of 'mutuality' or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Government's evidence as a whole, although not necessarily as to every link in the chain." *United States v. Kramer*, 289 F.2d 909, 913.

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame, and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

Straightforward application of the federal rule to the present case can lead to but one conclusion. For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury, by its verdict, found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

The ultimate question to be determined, then, in the light of *Benton v. Maryland*, *supra*, is whether this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it

4

is. For whatever else that constitutional guarantee may embrace, *North Carolina v. Pearce*, 395 U.S. 711, 717, it surely protects a man who has been acquitted from having to "run the gauntlet" a second time. *Green v. United States*, 355 U.S. 184, 190.

*Ashe v. Swenson*, 397 U.S. 436, 443-46, 90 S.Ct. 1189, 1194-95 (1970).

This second running of "the gauntlet" is precisely what the State intends to do to Andrew Bernwanger. The state should be Collaterally Estopped because it is attempting to litigate this second lawsuit under a separate cause of action, Driving While Intoxicated, that is based on common issues which have already been litigated and determined in the first suit, Running a Stop Sign and Passing on the Wrong Side of the Road.

## II.     Res Judicata

If the jury had rendered a guilty verdict in Andrew Bernwanger's trial, it is likely that res judicata would bar the defense from raising the validity of the stop in a motion to suppress. The Defense would in effect be (1) bringing a claim in a second action that is based on the same facts at issue in the first action; (2) seeking an additional or alternative remedy to the action sought earlier; and (3) bringing a claim that could have been joined in the first action. Res judicata would be employed in this situation to bring the matter to a close instead of allowing the Defense to bring subsequent litigation after an unfavorable first ruling on the basic elements of the claim. It is important to note here that the Defense risked something for the reward it received of the not guilty verdict.

**III. The State's Cases Are Not Controlling In That None Of Them Involve Jury Verdicts**

The State primarily relies upon *York v State* 342 S.W.3d 438 (Tex. Crim. App. 2011) and *Dowling v United States* 493 U.S. 342 (1990). Each case is quite distinguishable. If you will note in the second paragraph of the *Ashe* quote above it talks about what to do when a jury returns a verdict, however neither of the cases relied upon by the State are about jury verdicts.

In *York*, a county court judge granted a motion to suppress erroneously in a misdemeanor trial. The Judge had somehow misinterpreted the code of criminal procedure to believe that an officer outside the city limits of the city he was commissioned did not have the authority to investigate a possible burglary. The State then proceeded on a felony charge, where the District judge made a correct ruling on the motion to suppress. This case is quite distinguishable from the current one. First, there is no jury finding. Second, it is not the Fifth Amendment protections of double jeopardy that govern this judicial estoppel claim, but, rather, whether the district court was bound to follow the county court's incorrect ruling. The issue at hand was purely a question of law, not an interpretation of what factually happened on the day in question. For all these reasons, *York* is not controlling over the present case.

The next case the State relies upon is *Dowling*. This case concerns whether testimony offered under rule 404(b) is allowed when the defendant was acquitted of the crime about which the person was testifying. While the court held that such testimony being admitted was error, that error was harmless and not double jeopardy. A rule of

character evidence does not set precedent for cases in which a defendant was found not guilty by a jury of the very crime for which he is detained before subsequent investigation reveals yet another crime.

Furthermore the dicta of *Dowling* the state relies upon repeatedly uses the word civil.

> In *United States* v. *One Assortment of 89 Firearms*, 465 U.S. 354 (1984), for example, we unanimously agreed that a gun owner's acquittal on a charge of dealing firearms without a license did not preclude a subsequent *in rem* forfeiture proceeding against those firearms, even though forfeiture was only appropriate if t he jury in the forfeiture proceeding concluded that the defendant had committed the underlying offense. Because the forfeiture action was a civil proceeding, we rejected the defendant's contention that the Government was estopped from relitigating the issue of the defendant's alleged wrongdoing:
>
> "[The acquittal did] not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt. . . . The jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that [the defendant] was engaged in an unlicensed firearms business. . . . It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel."*Id.*, at 361-362.

*Dowling v. United States*, 493 U.S. 342, 349, 110 S.Ct. 668, 672-73 (1990).

The State is trying to take law used to allow civil litigation after a not guilty verdict to allow another criminal trial. Their logic does not follow from the law. Certainly, civil cases can be brought after an acquittal, but a civil trial never involves jeopardy in a constitutional context.

As the Court can see, none of the cases the State relies upon stand for the principal that they cite. There is no authority which allows the state to re-litigate the jury's finding of not guilty at a motion to suppress setting.

7

**IV.    State's Argument About The Lack of Evidence Is Likely Correct, But It Is Argued Insincerely**

Under the doctrine of collateral estoppel, the trial court should review the record of the first trial to decide what issues have been found against the State. The Defense produced at the hearing copies of the acquittal, a copy of the jury instructions, and a copy of each of the charging documents filed against Defendant.  RR 6-7.  Defense fully admits that he did not ask those to be marked and admitted, because the court told him they did not have time for an evidentiary hearing.  RR6.  However Defense counsel did file them with the court and thought they were part of the Clerk's record.  It is clear they did not make it before this court.  Also that day Defense did not have a copy of the transcript of the original proceeding.  RR 7.

Defense must now concede that under a claim of collateral estoppel, there needs to be the full hearing before the trial court can grant such a claim.  Defense is now in possession of the transcript and is ready to present it to the trial court.  For that reason, we ask this court to grant the Defense request for remand and a hearing on the subject.  At such a hearing the trial court could listen to the recording, and make a determination on what issues have been precluded from further prosecution.

In an attempt to not waste this Court's time, Defense asked the State if they would agree to the remand. They refused such an agreement. As such they make their argument insincerely.  They want this court to allow a second prosecution for the events of November 6, 2011, (any and all evidence of which would have come after the alleged

events he has been found not guilty of) without following the procedure they outline in their brief.

They claim that the appropriate procedure for a collateral estoppel claim is for the trial court to first examine the entire record of the first trial to decide what issues are precluded from re-litigation. When the defense agrees that such a hearing would be beneficial to this court, the State says they will not agree to a remand. In essence, they want to argue the controlling law in such a way as to not consider the underlying facts. Such an argument is flawed.

## V. Policy Considerations Discourage The Court From Taking The State's Position

What the State is attempting to do here is play a lawyer game about how the Defendant is punished for the behavior of Running a Stop Sign and Passing on the Wrong Side of the Road. Res judicata surely bars the defendant from arguing his motion to suppress had he lost the trial in Municipal Court. A judgment from the municipal court would certainly be enough evidence to defeat a motion to suppress. Why is it that what is good for the goose is not good for the gander? A more detailed look at how the parties have control over such an issue will reveal this is an affront to normal notions of fair play and justice.

The State is the only party in control of whether jeopardy attaches in any proceeding. This is so because they always have the power of dismissal. They can avoid a trial taking place at all. The Defendant's only remedy when the state announces for trial is to go and win the trial. Even then jeopardy has attached. Jeopardy attaches in a

9

plea and also if the defendant loses the trial. Thus the State is in sole control of whether jeopardy attaches. They get to choose their which the prefer: take the issue of stopping at a stop sign to the county judge at a motion to suppress, or take it to a jury at the municipal court. They made a choice and don't like the outcome. They can not be allowed to, in every case, chose to have two trials over the very same issue. Such is an affront to justice, and precisely the rationale prohibited in *Ashe*.

The State made a lawyer decision to proceed to a jury in a trial on the tickets. Such a choice should carry risk to balance the possible reward. The reward would be a guilty verdict barring re-litigation over the motion to suppress. The State should not get a second bite at the apple because of a clever lawyer decision. Such would encourage double prosecutions for every traffic offense that is the reasonable suspicion for any stop. If the State won at the trial the defense could not argue it to a judge because of res judicata.

However when the state loses the trial, they simply argue the same facts again and attempt to claim the lower burden. The purpose of the double jeopardy clause is to prevent precisely such lawyer games.

## PRAYER

For the foregoing reasons we ask the court to issue a remand to the trial court ordering them to have a hearing on why the jury returned a verdict of not guilty. In the alternative, we ask the court to uphold the trial court's order and respectfully request oral argument before this court.

## CERTIFICATE OF COMPLIANCE

10

According to the word count of the computer program used to prepare this document, it contains 3,226 words

## CERTIFICATE OF SERVICE

On July 15, 2015, a true copy of the foregoing was served via eServe on the following:

A. Cliff Gordon
Asst. Dist. Atty., 105th Dist.
Nueces County Courthouse
901 Leopard St., Rm. 206
Corpus Christi, TX 78401

/s/ R.C. Pate_____
R.C. Pate